❏ **Original**     ❏ **Duplicate Original**

# UNITED STATES DISTRICT COURT

for the

District of Alaska

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| INFORMATION ASSOCIATED WITH THE CELLULAR DEVICES ASSIGNED CALL NUMBERS (907) 351-9841, (907) 360-6616, AND (907) 342-7323, THAT IS STORED AT PREMISES CONTROLLED BY AT&T. | ) Case No. 3:20-mj-00442-MMS |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated by reference herein,

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated by reference herein.

**YOU ARE COMMANDED** to execute this warrant on or before _____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.     ❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ .
                                                                                                                       *(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*     ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____

                                                                                    _____
                                                                                    *Judge's signature*

City and state: _____         Magistrate Judge Matthew M Scoble
                                                                                    *Printed name and title*

**Return**

| Case No.:<br>  3:20-mj-00442-MMS | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date:  _____

                                   _____
*Executing officer's signature*

                                   _____
*Printed name and title*

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH THE
CELLULAR DEVICES ASSIGNED CALL
NUMBERS (907) 351-9841, (907) 360-6616,
AND (907) 342-7323, THAT IS STORED AT
PREMISES CONTROLLED BY AT&T.

Case No. 3:20-mj-00442-MMS

Filed Under Seal

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Douglas Marsden, being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with certain cellular telephones assigned call numbers (907) 351-9841, (907) 360-6616, and (907) 342-7323 ("the SUBJECT PHONES"), that are stored at premises controlled by AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, Florida 33408. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require AT&T to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the National Oceanic and Atmospheric Administration (NOAA), Office of Law Enforcement (OLE), and have been so employed since 2008. I am presently working for the Alaska Division in the Anchorage field office. Prior to my employment with NOAA OLE, I worked as police officer in the State of Illinois (1997-2000),

1

conservation enforcement officer with the United States Marine Corp (2001-2006), and a law enforcement officer with the United States Forest Service (2006-2008). During my career, I have carried out duties involving investigation, warrant service, apprehension, and/or detention of persons suspected or convicted of offenses against the criminal laws of the United States, the State of Alaska, the State of North Carolina, and the State of Illinois. I have received specialized training on digital evidence and mobile data acquisition from the Federal Law Enforcement Training Center.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 16 U.S.C. §§ 1372(a), 1375(b) (Knowingly and unlawfully taking, possessing, and transporting a marine mammal) and 18 U.S.C. § 371 (Conspiracy) have been committed by Paul Gil (aka: "Pawel Gil"). There is also probable cause to believe that the information described in Attachment A for evidence of these crimes as further described in Attachment B. Attachment A and Attachment B are fully incorporated by reference herein.

5.      NOAA Office of Law Enforcement is authorized to, among other things, conduct investigations into suspected violations of federal laws and regulations, including those found in the MMPA, 16 U.S.C. §§ 1361-1423, as well as other violations of federal law associated with such investigations.

//

//

2

## II.    LEGAL BACKGROUND AND JURISDICTION

6.      AT&T is a provider of an electronic communication service, as defined in

18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2).

Accordingly, the United States may use a search warrant to require AT&T to disclose to the

government copies of the information further described in Section I of Attachment B. *See* 18

U.S.C. § 2703; Fed. R. Crim. P. 41.

7.      This Court has jurisdiction to issue the requested warrant because it is "a court of

competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) &

(c)(1)(A).  Specifically, the Court is a "district court of the United States . . . that – has

jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).  As discussed

below, acts in furtherance of the offenses under investigation occurred in the District of Alaska.

*See* 18 U.S.C. § 3237.

## III.    PROBABLE CAUSE

8.      The United States is investigating Paul Gil (aka: "Pawel Gil") and others related to the

October 2017 unlawful shooting and killing of a harbor seal in Prince William Sound, near

Whittier, Alaska.  The investigation concerns possible violations of, *inter alia*, 16 U.S.C.

§§ 1372(a), 1375(b) (Marine Mammal Protection Act) and 18 U.S.C. § 371 (Conspiracy).

9.      Under the Marine Mammal Protection Act (MMPA), "marine mammal" includes "any

mammal which . . . is morphologically adapted to the marine environment (including . . .

members of the order[] . . . Pinnipedia . . .)." 16 U.S.C. § 1362(6).

10.     Seals are pinnipeds, and all seals – including harbor seals (Phoca vitulina) – are protected

under the MMPA.

3

11.    As relevant here, the MMPA makes it unlawful to knowingly take any marine mammal or marine mammal part in waters or on lands under the jurisdiction of the United States, or to possess or transport any marine mammal taken in violation of the MMPA. 16 U.S.C. §§ 1372(a)(2)(A), (a)(3), (a)(4)(A), 1375(b).

12.    "Take" means to mean "harass, hunt, capture, or kill, or attempt to harass, hunt, capture, or kill any marine mammal." 16 U.S.C. § 1362(13).

13.    Under the MMPA, "waters under the jurisdiction of the United States" includes the "territorial sea of the United States" and the "waters included within a zone, contiguous to the territorial sea of the United States, of which the inner boundary is a line coterminous with the seaward boundary of each coastal State, and the other boundary is a line drawn in such a manner that each point on it is 200 nautical miles from the baseline from which the territorial sea is measured." 16 U.S.C. § 1362(15)(A)-(B). The United States' territorial sea extends to twelve nautical miles. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 441 n.8 (1989).

14.    Under 18 U.S.C. § 371, it is unlawful for two or more persons to conspire to commit any offense against the United States if one or more of such persons do any act to affect the object of the conspiracy. 18 U.S.C. § 371.

15.    On July 27, 2019, T.M. made a report to the NOAA Enforcement Hotline that Paul Gil (hereinafter "Gil") shot and killed a seal in Prince William Sound, near Whittier, Alaska, in approximately

October 2017. T.M. further reported that Gil transported the dead seal from Whittier, Alaska, to his residence located at 7500 Basel Street, Anchorage, Alaska, where he was photographed skinning the marine mammal. T.M. also reported that Andrew Renner and Owen Renner were

4

involved in the take of the seal. T.M. reported having photos of Gil with the seal at Gil's Anchorage residence.

16.     On July 28, 2019, a NOAA Enforcement Officer (EO) Kevin Clark conducted an interview of T.M. T.M. reported that T.M.'s friend, M.G., had been in a domestic relationship with Gil in 2017. T.M. stated that, on or about July 2019, M.G. had told T.M. that Gil shot a seal in 2017, and sent T.M. pictures of Gil with the seal that were taken at Gil's residence in Anchorage.

17.     On July 29, 2019, T.M. provided three digital pictures to EO Clark. The pictures show a male subject, later identified as Paul Gil, skinning a harbor seal (Phoca vitulina). The photographs T.M. provided did not have metadata showing when they were taken.

18.     On July 31, 2019, EO Clark interviewed M.G. The information M.G. provided during that interview included the following:

        a.      In October 2017, Gil, who at that time was M.G.'s domestic partner, went on a
                hunting trip in Prince William Sound, which lasted about a week or week and a
                half.

        b.      Gil went with Andrew Renner and Owen Renner, both of whom were later
                prosecuted by the State of Alaska for their illegal take of a black bear sow and her
                cubs in 2018.

        c.      Upon returning from the hunting trip, Gil told M.G. that he had a surprise for
                M.G. and took M.G. to the backyard of the residence they shared at the time
                (7500 Basel Street, Anchorage, Alaska).

        d.      Gil then showed M.G. a seal that he told M.G. he had shot on the hunting trip.

        e.      M.G. told Gil that he could not shoot a seal, because he is not an Alaska native.

5

f.       Gil told M.G. that he would shoot M.G. if M.G. told anyone, and that they (Gil and M.G.) would say that M.G. shot the seal, since M.G. is Alaskan Native.[1]

g.      M.G. took photographs of Gil with the seal in their backyard. (The photographs are the same as those discussed above that T.M. provided to EO Clark.)

h.      When M.G. spoke with EO Clark on July 31, 2019, M.G. and Gil were estranged, involved in a custody dispute regarding their teenage child, and M.G. had a restraining order against Gil. M.G. said M.G. and Gil had had an on and off relationship for 20 years. (Court records show that in July 2019 M.G. and Gil had an open custody case, and that M.G. had a protective order against Gil.)

19.     On May 1, 2020, I, Special Agent (SA) Douglas Marsden, interviewed M.G. The information that M.G. provided during the May 1, 2020, interview included the following:

a.      M.G. received a call from Gil at some point during his October 2017 hunting trip to Prince William Sound with Andrew Renner and Owen Renner (hereinafter "the Renners").

b.      M.G. stated that the Renners' boat — which M.G. and Gil went fishing on in Prince William Sound in August 2017 — was red and white.

c.      M.G. showed SA Marsden pictures of the Renners' vessel.

---

[1] The MMPA exempts certain Alaskan Natives from its prohibitions, including the taking of marine mammals and their parts. Specifically, an Indian, Aleut, or Eskimo who resides in Alaska and dwells on the coast of the North Pacific Ocean or the Arctic Ocean may take marine mammals for (1) subsistence; or (2) purposes of creating and selling authentic native articles of handicrafts, which means items composed wholly or in some significant respect of natural materials and which are produced, decorated, or fashioned in the exercise of traditional native handicrafts, as long as either take is not accomplished in a wasteful manner. 16 U.S.C. § 1371(b); 50 C.F.R. § 216.23.

6

d.      M.G. believed Gil acquired an iPhone XR last Christmas. (Whether M.G. was referring to Christmas 2018 or Christmas 2019 is unclear.) M.G. communicates with Gil via **(907) 342-7323**.

e.      M.G. and Gil maintained a shared cellular phone plan with **AT&T** while they were together.

20.    On April 22, 2020, I received forensic evaluation reports from the Alaska State Troopers (AST) pertaining to the State of Alaska's 2018 prosecution of Andrew Renner and Owen Renner for wildlife and evidence tampering crimes. *State v. Andrew Renner*, 3AN-18-07334CR; *State v. Owen Renner*, 3AN-18-07337CR. According to a document provided entitled the "WIU Forensics" report, the Wildlife Investigations Unit took photographs of the Garmin Dakota 20 Global Positioning Device ("GPS") handheld unit belonging to the Renners, which AST obtained pursuant to a state search warrant. The photographs included approximately six photographs of the GPS device's screen that shows the device was in Prince William Sound on October 6, 2017, and October 7, 2017. More specifically, on October 6, 2017, the GPS shows a travel line leaving Whittier, Alaska, and travelling towards Naked Island, located in Prince William Sound. On October 7, 2017, the GPS shows a track line in the vicinity of Naked Island, documenting movement on the water and making landfall on what appeared to be Naked Island.

21.    According to his search warrant affidavit in 3AN-18-1698SW, Alaska State Trooper Gunderson conducted a review of Owen Renner's and Andrew Renner's respective Facebook accounts on May 29, 2018. On both of the Renner's Facebook pages, Gunderson observed a photo of Andrew Renner's red and white 22 ft Sea Sport vessel (the "Red Ryder"), as well as numerous pictures of hunting, fishing, harvested game animals, and trophies of big game animals in their homes.

7

22.     During the May 1, 2020, interview of M.G., another NOAA special agent extracted the original pictures that M.G. took of Gil with a dead seal from a cellular phone belonging to M.G. The metadata from those photographs show that they were taken on October 10, 2017. While the pictures were not geotagged, M.G. stated M.G. took them in the backyard of the residence that M.G. shared with Gil at the time (7500 Basel Street, Anchorage, Alaska). Additional data was also extracted from M.G.'s phone with M.G.'s consent. This information included the following accounts Gil used to communicate with M.G.: **(907) 351-9841, (907) 360-6616, (907) 342-7323,** paul.gil@gci.net, paulgilski@google.com, and paul.gil.pmp@gmail.com.

23.     In June 2020, SA Marsden obtained a federal search warrant for, *inter alia*, imaged copies of cell phones which belonged to Andrew Renner and/or Owen Renner. *See* 3:20-mj-287-DMS. That warrant remains under seal. The cell phones at issue in that warrant were originally seized in June 2018 by the Alaska State Troopers pursuant to state search warrants. In executing the federal warrant and analyzing data from the Renners' phones, SA Marsden found photos that show Gil in October 2017 with Andrew Renner and Owen Renner in Prince William Sound. For example, photos show Gil and the Renners near Naked Island on a deer hunt. Other photographs show M.G. and Gil on a fishing trip in August 2017 with the Renners on the same vessel that the Renners and Gil appear to have used during the October 2017 deer hunt in Prince William Sound. Additionally, SA Marsden identified the following numbers listed for Gil in Andrew Renner's phone: **(907) 351-9841 and (907) 360-6616**. Text messages found in Andrew Renner's phone from Gil using telephone number **(907) 360-6616**, show that Gil was using an iPhone 7 in 2017. For example, Gil used an iPhone 7 to send Andrew Renner a photo ("IMG_6877"), on October 4, 2017, via text from **(907) 360-6616**. Metadata for that photograph

8

— which depicts Andrew Renner on a vessel consistent with the one described above — shows it was taken on October 4, 2017, using an iPhone 7.

24.    During a May 1, 2020 interview, M.G. stated that M.G. received a call from Gil at some point during his October 2017 hunting trip to Prince William Sound with the Renners.

25.    Based on my experience, I know there are spots of cellular connectivity in Prince William Sound.

26.    On May 11, 2020, Special Agent Loughton, with the United States Forest Service (USFS), advised me that a USFS enforcement officer confirmed that Naked Island has cell service. (USFS frequently performs uniformed patrols in Prince William Sound.)

27.    Based on my training and experience, I know that pictures of items posted on websites such as Facebook and Instagram, or sent via email, are often taken using a cellular phone due to the easy internet interface upload on smartphones, like iPhones. Depending on the cellular device, and the settings on the cellular device, locations services may be activated. I know that when the location services are on, a cellular phone can geotag images if there is cell services present; some cellular devices also have GPS capabilities as well. I also know that social media accounts such as Facebook, Instagram, and others can be accessed using a cellular phone, and images and comments can be shared with others via the cellular device. Anything shared can be set to be viewable only to the persons who received the image and comments, and not the public. I also know that cellular devices are used to store photographs; and depending on the particular phone settings, those phones can automatically store and backup photographs to a "cloud" based service from the cellular/mobile device.

28.    Based on my training and experience, I know that people who enjoy hunting, fishing, boating, and other outdoor activities frequently document their trips by photographing them and

9

by sharing photographs of their trips with others by text message, posting them to social media (like Facebook or Instagram), and/or email. I also know that hunters and fishers often take photographs of their harvested animals/fish with their cellular/mobile devices and save the images on their cellular phones, as well as on computers in their homes and store the images on removable storage media such as: hard drives, thumb drives, flash media, etc.

29.     In my training and experience, individuals who engage in illegal conduct related to wildlife typically maintain information regarding their illegal conduct on their cellular phones, and later transfer the data to social media sites, computers, storage media, and/or other cellular phones.

30.     Based on my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or GPS data.

31. Based on my training and experience, I know that AT&T can collect cell-site data about the SUBJECT PHONES. I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes. On August 7, 2020, I sent a preservation request pursuant to 18 U.S.C. § 2703(f) to AT&T for all stored communications, records, and other evidence currently in AT&T's possession regarding Paul Gil and **(907) 351-9841, (907) 360-6616, and (907) 342-7323**. Additionally, I have confirmed that AT&T keeps records, including cell-site information as identified in Attachment B, Section I, for two to five years.

32. Based on my training and experience, I know that wireless providers such as AT&T typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as AT&T typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONES' user or users.

## IV.  AUTHORIZATION REQUEST

33. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

11

34.    I further request that the Court direct AT&T to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on AT&T, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

35.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

Douglas Marsden
Special Agent
NOAA Office of Law Enforcement

Subscribed and sworn to before me on_____, 2020,

_____
UNITED STATES MAGISTRATE JUDGE

12

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone(s) assigned call numbers (907) 351-9841, (907) 360-6616, and (907) 342-7323 ("the Account"), that are stored at premises controlled by AT&T ("the Provider"), headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, Florida 33408.

# ATTACHMENT B

## Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of AT&T ("the Provider"), including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a. For the time period August 2017 – present, the following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Length of service (including start date) and types of service utilized;

        iv. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        v. Other subscriber numbers or identities; and

        vi. Means and source of payment for such service (including any credit card or bank account number) and billing records.

    b. For the time period August 2017 – October 2017, the following information about the customers or subscribers of the Account:

Case 3:20-mj-00442-MMS   Document 5-1   Filed 03/02/21   Page 16 of 17

      i.   Local and long distance telephone connection records; and

     ii.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions.

c.  For the time period August 2017 – October 2017, all records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i.   the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

     ii.   information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 16 U.S.C. §§ 1372(a), 1375(b) (Knowingly and unlawfully taking, possessing, and transporting a marine mammal) and/or 18 U.S.C. § 371 (Conspiracy) involving Paul Gil (aka: "Pawel Gil") during approximately August 2017 - October 2017.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.